UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M‌ARKUS I‌RVING,

    Plaintiff,

v.

A‌NTHONY P‌ALMER,

    Defendant.

_____/

Case No. 18-cv-11617

U‌NITED S‌TATES D‌ISTRICT C‌OURT
J‌UDGE
G‌ERSHWIN A. D‌RAIN

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [#3] AND SETTING SCHEDULING CONFERENCE**

**I. I‌NTRODUCTION**

Plaintiff Markus Irving filed his complaint against Defendant Anthony Palmer on May 22, 2018 alleging defamation and other claims. On May 24, 2018, Plaintiff filed an Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction to prohibit Defendant from circulating any allegedly defamatory information about him. On May 29, 2018, this Court granted Plaintiff's Motion for Temporary Restraining Order. Presently before the Court is Plaintiff's Motion for a Preliminary Injunction. For the reasons discussed below, this Court will grant Plaintiff's Motion.

## II. FACTUAL BACKGROUND

This case involves a defamation suit. Plaintiff works as a dealer in the automotive industry. Dkt. No. 1, pg. 5 (Pg. ID 5). Defendant is a childhood friend of Plaintiff. *Id.* Defendant now resides in Texas. *Id.* Plaintiff alleges that on about March 23, 2018, Defendant published false and defamatory posts on Facebook stating that Plaintiff engaged in a fraudulent scheme to steal money from Defendant's mother. *Id.* at pg. 6 (Pg. ID 6). Plaintiff alleges that on April 2, 2018, Defendant sent an email to Plaintiff's employer, the Southgate Ford Dealership. *Id.* at pg. 7 (Pg. ID 7) The email alleged that Plaintiff engaged in a fraudulent scheme to take funds from Defendant's mother and other consumers. *Id.*

On April 3, 2018, Defendant submitted an allegedly false complaint to the Michigan Office of Attorney General Consumer Protection Division stating that Plaintiff engaged in a fraudulent scheme to take funds from Defendant's mother and other consumers. *Id.* at pg. 9 (Pg. ID 9). On April 4, 2018, Defendant sent another email to Plaintiff's employer, stating again that Plaintiff tried to defraud Defendant's mother and other consumers. *Id.* at pg. 10 (Pg. ID 10). On April 6, 2018, Plaintiff, by way of his counsel, demanded that Defendant cease making false and defamatory statements about him. *Id.* at pg. 13 (Pg. ID 13). On April 24, 2018, Defendant emailed Plaintiff's employer again with a similar email as before. *Id.* at pg. 11–12 (Pg. ID 11–12).

On May 22, 2018, Plaintiff filed his complaint against Defendant alleging various defamation claims, tortious interference with business relations, false light, and infliction of emotional distress. Dkt. No. 1. On May 24, 2018, Plaintiff filed his Motion for Temporary Restraining Order and Preliminary Injunction. Dkt. No. 3. This Court granted a temporary restraining order on May 29, 2018. Dkt. No. 4. Plaintiff had difficulty serving Defendant and was able to ultimately serve Defendant through alternate means on July 30, 2018. Dkt. No. 15, pg. 1 (Pg. ID 193). On August 14, 2018, Defendant filed a response to Plaintiff's Motion for Preliminary Injunction. Dkt. No. 15. On August 21, 2018, Defendant answered Plaintiff's complaint. Dkt. No. 21. Plaintiff filed his reply on September 3, 2018. Dkt. No. 19. Plaintiff's reply also requests this Court award him attorney's fees in the amount of $2,500.00. *Id.* at pg. 6 (Pg. ID 226).

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). A preliminary injunction seeks to "maintain the status quo pending a final hearing regarding the parties' rights." *All. for Mentally Ill of Mich. v. Dep't of Cmty. Health*, 588 N.W.2d 133, 137 (Mich. Ct. App. 1998). Whether to grant such relief is a matter within the

discretion of the district court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540–41 (6th Cir. 2007). The Court must balance four factors in determining whether to grant a request for a preliminary injunction. *Id.* at 542. Those factors are:

> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the injunction;
> (3) whether issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by the issuance of the injunction.

*Id.* Applying the factors, the Court finds that injunctive relief is appropriate.

## IV. DISCUSSION

1. Likelihood of Success on the Merits

First, the Court must determine whether the movant has demonstrated a strong likelihood of success on the merits. Plaintiff primarily asserts defamation claims against Defendant. To establish a defamation claim in Michigan, a movant must prove that there was:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Sakar v. Doe*, 897 N.W.2d 207, 220 (Mich. Ct. App. 2016).

### a. *False and Defamatory Statement*

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* In his Motion, Plaintiff submitted various Facebook posts and emails that Defendant circulated. These submissions include a Facebook post written by Defendant that called Plaintiff a "thief" and a "crook" and detailed Plaintiff's alleged scheme to defraud Defendant's mother. Dkt. No. 3, pgs. 24–26 (Pg. ID 90–92). Plaintiff also submitted emails written by Defendant on April 2, 6, and 24, 2018 which Defendant wrote to Plaintiff's employer. *Id.* at pgs. 34–46 (Pg. ID 100–112). These emails stated that Plaintiff defrauded Defendant's mother when he handled her car purchase. *Id.* Defendant also filed a consumer complaint with the Michigan Office of Attorney General detailing Plaintiff's alleged fraud against Defendant's mother. *Id.* at pgs. 48–51 (Pg. ID 114–117).

Based on Plaintiff's Facebook and email submissions, it is likely that Defendant's statements are defamatory. Plaintiff is a car salesman, and his conduct during his business transactions is critical to his reputation. Thus, Defendant's statements likely harmed Plaintiff's reputation as to lower him in the car salesman/dealership community.

Plaintiff must also prove that Defendant's statements are false. Plaintiff asserts that Defendant's statements about him are false and defamatory. However, the record does not prove that Defendant's statements about Plaintiff are definitely false. Even so, based on the record of statements as a whole, this Court finds that Plaintiff can likely prevail in showing that Defendant's statements about him are false.

### b. Unprivileged Communication

The record in this case establishes that Defendant made unprivileged communications to third parties—individuals on Facebook, Plaintiff's employer, and the Michigan Office of Attorney General. Therefore, Plaintiff can establish a strong likelihood of success on element two of a defamation claim.

### c. Fault Amounting to at Least Negligence

To establish fault amounting to negligence, a court must consider "whether the defendant exercised reasonable care and caution in checking on the truth or falsity and the defamatory character of the communication before publishing it." *Woodruff v. Ohman*, 166 F. App'x 212, 217 (6th cir. 2006) (quoting *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978)). Defendant's answer states that he made certain Facebook posts lacking knowledge or information. Dkt. No. 16, pg. 3 (Pg. ID 204). Thus, Plaintiff would likely be successful in alleging Defendant was negligent.

### d. Defamation per se or Special Harm

Words charging the commission of a crime are defamatory per se. M.C.L. 600.2911(1). Special harm refers to "the loss of something having economic or pecuniary value." § 7:2.Special Harm, Actual Harm, and Presumed Harm, 2 Law of Defamation § 7:2 (2d ed.). "Special harm requires an "actual temporal loss, a loss that is pecuniary or capable of being estimated in money." *Id.*

Plaintiff's Motion does not allege any harm that can be estimated in money damages. Plaintiff primarily alleges harm to his reputation. Dkt. Nos. 1, 3. Therefore, Plaintiff cannot likely establish special harm. However, Plaintiff does establish that he could likely succeed on a theory of defamation *per se*. Defendant's Facebook posts, emails, and complaint to the Michigan Office of Attorney General accuse Plaintiff of fraud and stealing money from his dealership clients—conduct that is criminally actionable. Thus, Plaintiff can succeed on establishing the last element of a defamation claim.

The above analysis indicates that Plaintiff's complaint against Defendant likely has a strong likelihood of success on the merits.

2. Irreparable Harm

To satisfy the second factor, a party must demonstrate that unless the injunction is granted, he or she will suffer "'actual and imminent harm' rather than harm that

is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

Defendant states in his affidavit that he has not engaged in communications concerning Plaintiff "in months." Dkt. No. 15, pg. 8 (Pg. ID 200). Plaintiff's reply brief states that Defendant has not engaged in any allegedly defamatory conduct since May 29, 2018. Dkt. No. 19, pg. 5, 43 (Pg. ID 225). Thus, the record demonstrates that Defendant has not engaged in any alleged defamatory statements in four months. However, at any time, Defendant could circulate more defamatory communications concerning Plaintiff. Thus, this Court finds that Plaintiff could suffer irreparable harm without an injunction.

3. Substantial Harm to Others and Public Interest

In the third factor, the Court must consider whether the issuance of the injunction would cause substantial harm to others. And finally, in the fourth factor, the Court must consider whether the public interest would be served by the issuance of the injunction. There is no indication that a preliminary injunction would cause substantial harm to third parties or to the Defendant. As to the final factor, no important public policies appear to be implicated in this case, other than the general public interest to be free from defamation.

After considering the four factors outlined above, this Court finds that issuance of a preliminary injunction is the appropriate remedy. Plaintiff has brought evidence to demonstrate a strong likelihood of success on the merits of his complaint. Additionally, the factors of irreparable harm, harm to others, and the public interest weigh in favor of Plaintiff as well. Thus, this Court will issue a preliminary injunction.

4. Attorney's Fees

Plaintiff's reply requests attorney's fees in the amount of $2,500 dollars for Plaintiff's "continuous attempts and efforts to delay the proceedings in this action and waste the Court's and Plaintiff's time and expense, and failure to adhere to the Court's rules and protocols . . . ." Dkt. No. 19, pg. 7 (Pg. ID 227). This Court has considered Plaintiff's request and will deny Plaintiff's request for attorney fees.

## V. Conclusion

For the reasons discussed herein, the Court will GRANT Plaintiff's Motion, but deny Plaintiff's request for attorney fees. In addition, this Court will set a scheduling conference for Wednesday, October 10 at 10:00 a.m.

SO ORDERED.

Dated: October 1, 2018

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 1, 2018, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager Generalist
